SIGNED THIS: March 12, 2015

_____
**Thomas L. Perkins
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CENTRAL ILLINOIS ENERGY | ) | No. 09-81409 |
| COOPERATIVE, | ) | |
|               Debtor. | ) | |
| | ) | |
| | ) | |
| A. CLAY COX, not individually but as | ) | |
| Trustee for the estate of Central Illinois | ) | |
| Energy Cooperative, | ) | |
|               Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 09-8143 |
| | ) | |
| NOSTAW, INC., an Illinois corporation, | ) | |
|               Defendant. | ) | |

**O P I N I O N**

The Plaintiff moves for reconsideration of the grant of summary judgment in favor of the Defendant, Nostaw, Inc. (NOSTAW). The Plaintiff, A. Clay Cox (TRUSTEE), is the Trustee for the chapter 7 estate of the Debtor, Central Illinois Energy Cooperative (DEBTOR).

**FACTUAL AND PROCEDURAL BACKGROUND**

The DEBTOR spearheaded the development of an ethanol production plant near Canton, Illinois, and retained NOSTAW as general contractor to build an adjacent grain handling facility to supply grain necessary for the production of ethanol. The ethanol plant was to be built by a separate entity, Central Illinois Energy, LLC (CIE), in which the DEBTOR owned a majority 71% interest via a holding company. The entire project failed, leading to CIE'S bankruptcy on December 13, 2007, and an involuntary bankruptcy petition against the DEBTOR on May 1, 2009.

In June, 2007, the DEBTOR executed a rescue plan with Green Lion Biofuels, LLC, whereby Green Lion bought the unfinished grain handling facility assets with the agreement that its lender, Ridgestone Bank, would finance the completion of the construction, after which the completed grain handling facility was to be either repurchased by the DEBTOR or sold to CIE. When Green Lion's lender balked, and NOSTAW threatened to stop the project, the DEBTOR stepped back in and agreed to pay NOSTAW so that NOSTAW would finish the construction of the grain handling facility. The DEBTOR and NOSTAW executed the "Second Agreement" dated September 28, 2007, whereby the DEBTOR agreed to pay NOSTAW $988,859.83, with a down payment of $300,000, and the balance to be paid "as agreed upon as work progresses." NOSTAW continued its work and the DEBTOR paid NOSTAW three payments of $300,000 each.

Granting summary judgment in favor of NOSTAW, this Court in its Opinion of November 20, 2014 (the "First Opinion") applied the rule that where a debtor makes a transfer in satisfaction of its own liability, the transfer is not constructively fraudulent. The

TRUSTEE concedes that rule of decision. The TRUSTEE'S sole argument here is that the DEBTOR'S three payments to NOSTAW, totaling $900,000, did not discharge a liability of the DEBTOR because the Second Agreement was unenforceable for want of consideration. This argument could be successful only if the TRUSTEE would also prevail on his argument that the Green Lion purchase agreement in June, 2007, was a novation that released the DEBTOR from its then existing liability to NOSTAW under the construction contract. The Court noted but declined to decide that issue in the First Opinion.

The Court determined in the First Opinion that the Second Agreement embodied a contractual obligation enforceable by each party against the other, for the DEBTOR to pay NOSTAW in exchange for NOSTAW'S continuation and completion of the construction work on the grain handling facility necessary to make it operational. When the DEBTOR paid $900,000 to NOSTAW pursuant to that agreement, the payments were in satisfaction of its contractual liability. As such, the payments could not have been constructively fraudulent as a matter of law.

In his motion to reconsider, the TRUSTEE claims that the Second Agreement was "unenforceable" for want of consideration, that no debt was created by the Second Agreement, so that any payments thereunder were gratuitous and constructively fraudulent. The Court erred, argues the TRUSTEE, by determining that the Second Agreement was a valid contract supported by adequate consideration.

The terms of the Second Agreement itself and all of the testimony of the witnesses in the record support the Court's conclusion. The DEBTOR'S promise of payment was

made in exchange for NOSTAW'S promise to perform work. These mutual promises are adequate consideration for each other. Therefore, a valid bilateral contract was formed.

The TRUSTEE does not contend that these mutual promises were not exchanged. Instead, he focuses on Green Lion's purchase of the grain handling assets in June, 2008, and its accompanying assumption of the DEBTOR'S obligation to pay NOSTAW for the work already performed and yet to be performed by NOSTAW. The TRUSTEE contends that the June, 2008, purchase resulted in a novation whereby Green Lion was substituted for the DEBTOR as to its obligation to pay NOSTAW under the original construction services agreement and that the DEBTOR was released from its liability to NOSTAW. Therefore, he argues, when the DEBTOR later paid NOSTAW $900,000, it was gratuitously paying the debt of Green Lion, that the DEBTOR received nothing of value in return for its payment, that the absence of value received by the DEBTOR means consideration was absent, so that the Second Agreement was unenforceable and the payments were constructively fraudulent. The TRUSTEE'S argument is unsupportable as a matter of fact and wrong as a matter of law, as hereafter explained in this Second Opinion.

In its motion for summary judgment, NOSTAW argued that the payments it received in October and November, 2007, were in satisfaction of the DEBTOR'S liability evidenced by the Second Agreement and accordingly could not be avoided as constructively fraudulent. The TRUSTEE responded by alleging that the Second Agreement was itself avoidable as a fraudulently incurred obligation under section 544. In its Opinion, the Court rejected that argument because the limitations period for such actions had expired several years ago. The TRUSTEE does not contend that the rejection of that argument was in error.

4

Although the TRUSTEE does not dispute any particular finding of fact and agrees that the material facts are undisputed, he contends that he, not NOSTAW, is entitled to judgment as a matter of law. This is an unusual situation where the legal effect of undisputed facts is the subject of the dispute. So it is important to reiterate the undisputed material facts.

In conjunction with the TRUSTEE'S motion for partial summary judgment, filed July 11, 2014, as Document 68, he filed a statement of material facts as to which there is no dispute. In that statement, at paragraphs 42 and 43, the TRUSTEE represents as undisputed facts that in September 2007, a dispute arose between Green Lion and NOSTAW regarding non-payment by Green Lion (Doc. 68-1, ¶ 42), and that as a result, in September, 2007, the DEBTOR undertook the obligation to repay the Green Lion debt (Doc. 68-1, ¶ 43). He further represents as an undisputed fact that the DEBTOR'S undertaking was predicated on the fact that CIE needed the grain handling facility to be operational so that it could be supplied with corn to make ethanol (Doc. 68-1, ¶ 44). He further represents as an undisputed fact that the DEBTOR'S Board of Directors authorized a $1,000,000 loan from Whitebox Advisors to pay the Green Lion Note and fund ongoing construction of the grain handling facility (Doc. 68-1, ¶ 45). The TRUSTEE also represents as an undisputed fact that the three payments to NOSTAW of $300,000 each were made by the DEBTOR pursuant to its undertaking evidenced by the Second Agreement (Doc. 68-1, ¶ 51).[1]

---

[1] The cross motions for summary judgment were filed simultaneously. Only when NOSTAW raised the effect of the Second Agreement in its motion, did the TRUSTEE thereafter make the assertion that it was unenforceable. The effect of the Second Agreement has been at issue, however, since at least April 13, 2010, when NOSTAW raised it in the joint pretrial statement filed as Document 23. NOSTAW is not contending that the TRUSTEE, in his motion, admitted the enforceability of the Second Agreement. The Court's determination that the Second Agreement is supported by consideration and thus enforceable is based upon the undisputed facts in the record.

**ANALYSIS**

— A —

As noted in the First Opinion, the Court rejected the TRUSTEE'S unpleaded theory that the Second Agreement was avoidable as a fraudulently incurred obligation because he had not filed a complaint to do so within the time required by law. It is widely recognized by courts that where a debtor makes prepetition payments on a contractual debt, in order for those payments to be avoidable as constructively fraudulent, it is necessary for the trustee to first avoid the underlying contract as a fraudulently incurred obligation. *In re Tanglewood Farms, Inc. of Elizabeth City,* 487 B.R. 705 (Bank.E.D.N.C. 2013); *In re Incentium, LLC,* 473 B.R. 264 (Bankr.E.D.Tenn. 2012); *In re TSIC, Inc.,* 428 B.R. 103 (Bankr.D.Del. 2010); *In re All-Type Printing, Inc.,* 274 B.R. 316 (Bankr.D.Conn. 2002). Absent avoidance of the underlying contract, the payments discharge the obligation and are, by definition, for reasonably equivalent value.

In the Court's view, not having sought to avoid the Second Agreement, the TRUSTEE'S theory that it is unenforceable for want of consideration is a fall-back position that was not well-developed in his motion for summary judgment. While the Court determines the want of consideration theory to be meritless as a matter of fact and law, since summary judgment is being granted against the TRUSTEE this Second Opinion will set forth as thorough and clear an explanation of this Court's reasoning as possible. Additionally, the Court gives the TRUSTEE the benefit of addressing several alternative arguments that were not actually asserted in his motion to reconsider and accompanying memorandum.

— B —

The TRUSTEE'S attack on the Second Agreement as unenforceable is first raised in the briefing related to the summary judgment motions. As noted, the TRUSTEE never filed a complaint to avoid the Second Agreement as a fraudulent undertaking under section 544 or section 548 and it is now too late to do so. This begs the question as what exactly is the source of the TRUSTEE'S power to attack the Second Agreement?[2]

A trustee in bankruptcy draws his rights and authority from the Bankruptcy Code. That authority falls into two broad categories: (1) rights and claims held by the trustee as successor to the debtor's interests included as property of the estate under 11 U.S.C. § 541, and (2) actions brought under one of the trustee's avoidance powers. *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996). The property accruing to the estate under section 541(a)(1) includes all rights the debtor may have under and arising from its contracts. *Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 36 (Bankr.N.D.Ill. 2010).

The importance of clearly identifying the statutory source of a trustee's authority cannot be overstated, as each statutory provision carries particular rules of decision. *See, e.g., In re Equipment Acquisition Resources, Inc.*, 742 F.3d 743, 746 (7th Cir. 2014). When the TRUSTEE in his response to NOSTAW'S summary judgment motion asserted his position that the Second Agreement was unenforceable for want of consideration, he did not identify the provision in the Bankruptcy Code that would provide his authority for seeking that adjudication.[3] Whether or not a trustee self-identifies the source of his authority, a

---

[2]It goes without saying that just because the TRUSTEE asserts in conclusory fashion that the Second Agreement is unenforceable for want of consideration doesn't make it so. NOSTAW disputes the TRUSTEE'S assertion and the record contains evidence of adequate consideration.

[3]The TRUSTEE did provide a statutory reference, section 544, for his alternative theory that the Second Agreement was itself avoidable as a fraudulently incurred obligation, a theory the Court found meritless because it depended upon obtaining a judgment of avoidance in an unfiled adversary proceeding that was clearly time-barred.

7

bankruptcy court must do so since the rules of decision depend upon it. The fact that NOSTAW did not weigh in on the issue is immaterial. The court determines the applicable law. No matter what the parties say or don't say, the court must ultimately identify the issue and apply the correct rules of decision to resolve it.

Since the TRUSTEE is time-barred from attempting to avoid the Second Agreement as a fraudulently incurred obligation under section 544, his power to challenge it as unenforceable for want of consideration necessarily arises under section 541. A trustee's rights under section 541 are derivative of those held by the debtor. The Second Agreement is a bilateral contract between the DEBTOR and NOSTAW. The TRUSTEE is challenging the enforceability of that contract as part of his action against NOSTAW. In doing so, the TRUSTEE steps into the shoes of the DEBTOR. It is a given that a trustee can assert no greater rights than the debtor itself had on the date the bankruptcy case was commenced.[4] *In re Majestic Star Casino, LLC,* 716 F.3d 736, 748 (3d Cir. 2013). When exercising a debtor's rights and interests that are property of the estate, a trustee is subject to the same restrictions and limitations to the same extent as the debtor would have been outside of bankruptcy. *Matter of Sanders,* 969 F.2d 591, 593 (7th Cir. 1992). It follows that a trustee asserting a debtor's rights via section 541 is subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor. *In re Derivium Capital LLC,* 716 F.3d 355, 367 (4th Cir. 2013); *Peterson v. McGladrey & Pullen, LLP,* 676 F.3d 594, 596 (7th Cir. 2012); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1154 (3d Cir. 1989). So the correct inquiry is whether the DEBTOR would have

---

[4] The involuntary petition was filed against the DEBTOR on May 1, 2009. The order for relief was entered on June 18, 2009. The Second Agreement and the three challenged payments date to September, October and November, 2007.

8

prevailed in an action against NOSTAW to have a court declare the Second Agreement unenforceable for want of consideration, based upon the facts as they existed on the date of the order for relief, taking into account any defenses then available to NOSTAW.

– C –

The TRUSTEE'S contention of error by the Court is founded on two related principles of contract law. He cites *Moehling v. W.E. O'Neil Const. Co.,* 20 Ill.2d 255, 170 N.E.2d 100 (1960) for the principle that "an executory contract without consideration cannot be enforced either in a court of law or one of equity." He cites *Scott v. Leaf River State Bank,* 242 Ill.App. 268 (Ill.App. 2 Dist. 1926), for the principle that "a promise to pay the antecedent debt of a third party must be supported by new consideration," absent which the agreement is unenforceable. The TRUSTEE'S reliance on those principles is superficial and misplaced in light of the facts before this Court.

The *Leaf River* case did not involve a bilateral contract. A bilateral contract, by far the most common kind, is formed by an exchange of promises. *Dixon v. Betten,* 2 Ill.App.3d 708, 710, 277 N.E.2d 355 (Ill.App. 5 Dist. 1971). In *Leaf River,* a debtor acted to bail out one of his sons who had become indebted to a bank through a check kiting scheme. The debtor signed promissory notes evidencing the debt and secured them with a trust deed. The issue at trial was whether the bank, in exchange for the notes and trust deed, had released the son or had otherwise made a promise of forebearance or agreed to extend the time for payment of the debt. Based on the evidence, the court determined that the bank had made no such release, promise or agreement, without which a bilateral contract had not been formed. The court then applied the long-standing principle of law that when one person

9

promises to guarantee or pay the antecedent debt of another, some new consideration is necessary to support the promise, such as the creditor's agreement to release the debtor or grant forebearance of some kind. That principle is a corollary to the rule that a contemporaneous guaranty of a third person's debt does not need independent consideration. *L.D.S., LLC v. Southern Cross Food, Ltd.*, 2011 IL App (1st) 102379, 954 N.E.2d 696, 708; *Continental Nat. Bank of Ft. Worth v. Schiller,* 89 Ill.App.3d 216, 219, 411 N.E.2d 593 (Ill.App. 3 Dist. 1980). The *Leaf River* court also recognized that the new consideration need not flow to the third party, as it is sufficient that the original debtor alone be benefitted, by release or forebearance.[5]

In the case at bar, the parties entered into a bilateral contract by exchanging mutual promises. NOSTAW promised to complete the grain handling facility in exchange for the DEBTOR'S promise of payment. A written contract was executed which sets forth those promises. The record contains no evidence whatsoever to indicate, either directly or by inference, that the DEBTOR via the Second Agreement was intending to make only a unilateral promise to pay NOSTAW, without receiving NOSTAW'S promise to complete the project. The TRUSTEE points to no such evidence. All of the evidence in the record supports the conclusion that the Second Agreement was a negotiated bargain between the DEBTOR and NOSTAW evidencing an exchange of mutual promises.[6] As bargained for, the Second Agreement gave the DEBTOR the right to compel NOSTAW to finish the

---

[5] *Leaf River* contradicts the TRUSTEE'S position that it was necessary for the DEBTOR to receive value for the Second Agreement to be enforceable. Even if the TRUSTEE was arguing that Green Lion received the benefit of NOSTAW'S work, the Second Agreement would nevertheless be a valid, enforceable bilateral contract binding against the DEBTOR.

[6] Mike Smith's testimony is clear and uncontradicted that the DEBTOR was acting on information that Green Lion's lender was balking at providing the funds needed to pay NOSTAW. The DEBTOR, through Smith and its directors, viewed completion of the grain handling facility as critical to the ethanol plant side of the project, which explains the rationale for entering into the Second Agreement.

project and it gave NOSTAW the right to compel the DEBTOR to pay what was owed. The Second Agreement effectively removed Green Lion and its financial uncertainties from the middle of the grain handling facility project. Getting Green Lion out of the picture benefitted both the DEBTOR and NOSTAW. It is an undisputed fact that the DEBTOR and NOSTAW bargained for and obtained the direct contractual liability, each to the other, in the Second Agreement. The *Leaf River* case, involving a debtor's unilateral execution and delivery of notes and a trust deed for no promise by the bank, is factually distinguishable. The principle of law that a promise to pay the antecedent debt of a third party must be supported by new consideration is inapposite as a matter of fact given the bilateral contract formed between the DEBTOR and NOSTAW, where new consideration was given in the form of NOSTAW'S promise to complete the work.

— D —

The TRUSTEE relies upon the principle of law that "an executory contract without consideration cannot be enforced either in a court of law or one of equity," citing a series of cases that state this principle, including *Moehling v. W.E. O'Neil Const. Co.* 20 Ill.2d at 265. The TRUSTEE misconstrues this principle. Since consideration is a necessary element to formation of a contract, by definition it is true that a promise that lacks mutuality is not a contract that will be enforced by a court. *Carter v. SSC Odin Operating Co., LLC,* 2012 IL 113204, 976 N.E.2d 344. If a promise sought to be enforced in court is not supported by consideration, the action to enforce the promise will fail. *McLean v. McBean,* 74 Ill. 134, 1874 WL 9092 (1874).

It is black letter law that mutual and concurrent promises provide sufficient legal consideration to support each other. *Leisure v. Smith,* 13 Ill.App.3d 1070, 1073, 302 N.E.2d 177 (Ill.App. 5 Dist. 1973). In the Second Agreement, the DEBTOR'S promise to pay NOSTAW is mutual and concurrent with NOSTAW'S promise to complete the grain handling facility. These mutual and concurrent promises are sufficient consideration to render the Second Agreement a valid bilateral contract enforceable in a court of law.

The rule enunciated in *Moehling* and its ilk means exactly what it says, that when the enforceabilty of a contract is in dispute, the issue is subject to determination by a court in a legal proceeding. Without a judicial determination that a promise will not be enforced against the promisor, whether for want of consideration or any other defense, the possibility that a contract might be determined to be "unenforceable" in a court of law at some future time (which could be said of every executory contract) does not make the contract void or "unperformable." The promisor may choose to perform the promise even if a court might not have ordered it. As discussed below, the issue of mutuality of obligation (i.e., consideration) is mooted by performance. *Worner Agency, Inc. v. Doyle,* 133 Ill.App.3d 850, 856, 479 N.E.2d 468 (Ill.App. 4 Dist. 1985). Performance occurred in the case at bar when the DEBTOR obtained a loan and paid NOSTAW the three payments totaling $900,000 in exchange for NOSTAW'S completion of the project.[7]

— E —

As a matter of Illinois law, the DEBTOR could not have prevailed in a hypothetical lawsuit against NOSTAW because the Second Agreement was no longer executory when

---

[7]To the extent that the TRUSTEE wants to interpret the rule in *Moehling* to mean that a contract that is subject to being challenged based upon an allegation of want of consideration is, by virtue of that mere allegation alone, somehow rendered nugatory as a matter of law, the Court disagrees. That proposition is wholly without support and is contrary to established principles of contract law.

12

the order for relief was entered in June, 2009. The Second Agreement was substantially performed as of November, 2007. NOSTAW did not walk off the job and did not file a claim for mechanics lien, rather it provided the construction services it promised under the Second Agreement to complete the construction of the grain handling facility. NOSTAW performed its side of the Second Agreement. The DEBTOR paid NOSTAW $900,000 out of the total of $989,859.83, or 91% of the amount due. The Second Agreement was no longer "executory" when the DEBTOR'S bankruptcy case was commenced. The TRUSTEE'S assertion that it was "executory" is inaccurate and misleading.

Want of consideration is an affirmative defense to enforcement of a contract. 735 ILCS 5/2-613(d). The burden of proving the affirmative defense of want of consideration is upon the party asserting it. *Hamilton Bancshares, Inc. v. Leroy,* 131 Ill.App.3d 907, 911, 476 N.E.2d 788, 791 (Ill.App. 4 Dist. 1985). A party to a contract who accepts its counterparty's performance under the contract may not later challenge the enforceability of the contract, effectively having waived such rights. *Hines v. Ward Baking Co.,* 155 F.2d 257, 259 (7th Cir. 1946) (decided under Illinois law, citing *Snow v. Griesheimer,* 220 Ill. 106, 77 N.E. 110 (1906)); *WorldCom, Inc. v. Free Paging, Inc.,* 2003 WL 1713603 (N.D.Ill. 2003); Richard A. Lord, 3 WILLISTON ON CONTRACTS § 7:15 (4th ed.). A trustee in bankruptcy is bound by any waiver of a defense made by a debtor before the filing of the petition. *Matter of Wey,* 827 F.2d 140, 142 (7th Cir. 1987).

For purposes of exercising a debtor's rights under section 541, a trustee takes the facts as they exist at the time of bankruptcy. The Second Agreement had been performed

13

as of November, 2007, and was no longer executory when the DEBTOR entered bankruptcy in 2009. Under these circumstances, the defense of want of consideration was no longer available to the DEBTOR and was not resurrected in favor of the TRUSTEE when the bankruptcy case was commenced. Even if a contract lacks consideration, if it is enforceable because of performance or any other reason, it can serve as fair consideration for payments made under it, subject only to a trustee's timely challenge to the initial creation of the debt as fraudulent. *In re Curry & Sorensen, Inc.,* 112 B.R. 324, 327 (9th Cir.BAP 1990). Based upon the undisputed facts in the record, the TRUSTEE'S ability to challenge the enforceability of the Second Agreement for want of consideration is barred because the DEBTOR lost the right to do so when it accepted NOSTAW'S performance.[10]

### — F —

Even if the TRUSTEE had the right to challenge the Second Agreement for want of consideration, he has failed to produce evidence that raises a genuine issue of material fact. It is important to note that the TRUSTEE is not arguing that the Court overlooked facts in the record that support his position. The TRUSTEE contends in his motion to alter or amend and accompanying memorandum that the Court erred as a matter of law when it rejected the TRUSTEE'S theory that the Second Agreement was unenforceable. He contends that no new value passed to the DEBTOR. Therefore, argues the TRUSTEE, the Second Agreement could not have been supported by adequate consideration.

---

[10] Ordinarily, once performance has been rendered, a party seeking to undo a contract must seek rescission as the sole remedy. However, a party may not rescind a contract without returning to the other party any consideration received under it. *Fleming v. U.S. Postal Service AMF O'Hare,* 27 F.3d 259, 260 (7th Cir. 1994). Since return of NOSTAW'S work is impossible, the TRUSTEE is not seeking rescission. Moreover, this points out the absurdity of challenging the "enforceability" of a contract that is no longer executory because the parties rendered performance. The rule in *Moehle* expressly applies only to contracts that are "executory."

14

The TRUSTEE'S argument is contrary to the undisputed facts in the record and, in addition, incorporates the wrong legal standard. His argument is phrased in terms of reasonably equivalent value, such as would be applicable to a fraudulent conveyance issue, which the present issue is not.[11] The issue at bar is the more fundamental and simpler question of whether sufficient consideration existed to support the Second Agreement as a matter of contract law.

In a fraudulent transfer avoidance action, reasonably equivalent value is determined by measuring the value of what the debtor received against the value of what it transferred. *Barber v. Golden Seed Co., Inc.,* 129 F.3d 382, 387 (7th Cir. 1997). The TRUSTEE erroneously relies on that standard by contending that the DEBTOR "received nothing in return" for its agreement to pay NOSTAW so that the Second Agreement was thus unenforceable for want of consideration. Principles of contract law, however, do not require that the values exchanged be equivalent. *Carter v. SSC Odin Operating Co., LLC,* 2012 IL 113204, 976 N.E.2d 344, 352. In fact, adequacy of consideration is within the exclusive dominion of the parties and courts are not to inquire into the adequacy of the consideration to support a contract. *Id.*; *Gallagher v. Lenart,* 226 Ill.2d 208, 243, 874 N.E.2d 43 (2007); *Prairie Rheumatology Assoc., S.C. v. Francis,* 2014 IL App (3d) 140338, 24 N.E.3d 58.

Any act or promise which is of benefit to one party or disadvantage to the other is sufficient consideration to support a contract. *Carter v. SSC Odin Operating Co., LLC,* 976 N.E.2d at 352. Valuable consideration for a contract consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility

---

[11]*See* Trustee's Memorandum of Law (Doc. 80), argument sections I and III.

15

given, suffered or undertaken by the other. *Dohrmann v. Swaney,* 2014 IL App (1st) 131524, 14 N.E.3d 605, 611. It is not necessary that each party to a bilateral contract receive value or a benefit from the other. Even if the DEBTOR received nothing of value from NOSTAW, a proposition that is demonstrably untrue, it would be enough consideration that NOSTAW promised "some forbearance, detriment, loss or responsibility," which it did as a matter of undisputed fact. Whether consideration is sufficient to support a contract is a question of law for the court to decide. *Id.*

The Second Agreement evidences a bargained for exchange of mutual promises. The DEBTOR promised to pay NOSTAW $988,859.83 in consideration for NOSTAW'S promise to complete the work on the grain handling facility. Mutual promises have long been held to provide sufficient legal consideration to support a contract. *Solimini v. Thomas,* 293 Ill.App.3d 430, 437, 688 N.E.2d 356 (Ill.App. 2 Dist. 1997); *Wilson v. Continental Body Corp.,* 93 Ill.App.3d 966, 970, 418 N.E.2d 56 (Ill.App. 1 Dist. 1981); *Burnside v. Potts,* 23 Ill. 411, 1860 WL 6271 (Ill. 1860). NOSTAW promised to provide the construction services needed to get the grain handling facility operational in exchange for the DEBTOR'S promise to pay it.[12] NOSTAW'S promise is sufficient consideration to support the DEBTOR'S promise to pay, which the Court hereby determines as a matter of law.

The TRUSTEE relies upon the proposition that satisfaction of unenforceable debts incurred as a result of illegal gambling or through a Ponzi scheme does not constitute "reasonably equivalent value." Doc. 80, n.6. As indicated above, this is the wrong

---

[12]The record is clear and undisputed that the DEBTOR desperately needed the grain handling facility to be completed and that was the basis for the bargain set forth in the Second Agreement. See deposition of Michael W. Smith, Doc. 68-3, pp. 28-37. See, also, Affidavit of Michael W. Smith, Doc. 68-5, pp. 130-131. See, also, DEBTOR'S Board Meeting minutes for October 1, 2007, and Resolutions of same date, authorizing the $1,000,000 loan from Whitebox Advisors, Doc. 68-5, pp. 133-135. See, also, testimony of Michael W. Smith regarding the DEBTOR'S repurchase of the grain handling facility from Green Lion. Doc. 68-3, pp. 37-42. The TRUSTEE admitted the facts explaining the purpose for the Second Agreement in his statement of material facts, Doc. 68-1.

16

standard for contract consideration. Moreover, the Second Agreement cannot be characterized as embodying an illegal purpose or as contrary to public policy. Even so, Illinois law is clear that even if a contract is illegal or against public policy, a court will not set it aside after performance has been rendered. *Wiegand v. Wiegand,* 410 Ill. 533, 543, 103 N.E.2d 137 (1951); *First Trust & Sav. Bank of Kankakee v. Powers,* 393 Ill. 97, 103, 65 N.E.2d 377 (1946); *Partee v. Compton,* 273 Ill.App.3d 721, 724, 653 N.E.2d 454 (Ill.App. 5 Dist. 1995).

– G –

Even if it was necessary for the DEBTOR to receive value in order for the Second Agreement to be enforceable, the undisputed facts clearly show value. In support of his contention that the DEBTOR "received nothing" in consideration for its agreement to pay NOSTAW, the TRUSTEE attempts to characterize the Second Agreement as nothing more than a gratuitous device for the DEBTOR "to pay Green Lion's antecedent debt." Doc. 80, pp. 7-8. The undisputed evidence in the record contradicts this characterization.

It is undisputed that the DEBTOR'S June, 2007, sale of the grain handling assets to Green Lion was done with the belief that Green Lion would be better able to obtain financing to complete the construction work. This expectation was defeated when Ridgestone Bank balked. But contrary to the TRUSTEE'S position, the sale of the assets did not eliminate the interest of the DEBTOR in the grain handling facility project, as evidenced by the following facts:

- The DEBTOR retained the obligation to manage and administer the construction project.

- The DEBTOR bargained for and obtained a conditional right to repurchase or have CIE purchase the grain handling assets.

17

- The DEBTOR owned a controlling 71% interest in CIE through its holding company.

- The DEBTOR'S Board of Directors, in the exercise of its business judgment, authorized the Second Agreement and a $1,000,000 loan necessary to pay NOSTAW.

- According to the undisputed testimony of Michael W. Smith, completion of the grain handling facility was critical to the operation of the ethanol plant, which was anticipated to become operational in the fall of 2007.

The fact that NOSTAW performed the work in exchange for the payments referenced in the Second Agreement is set forth in the June 15, 2010, Affidavit of Michael W. Smith, which the TRUSTEE submitted as an exhibit with his motion for summary judgment. Doc. 68-4, Exh. C-2, pp. 44-45. The causal link between the work performed by NOSTAW under the Second Agreement and the $900,000 paid by the DEBTOR is also admitted by the TRUSTEE in his statement of material facts, Doc. 68-1, ¶ 51.

The facts that demonstrate the benefit to the DEBTOR are undisputed. Therefore, the Court accepts them as true for purposes of the summary judgment motions and the TRUSTEE'S motion to reconsider. These undisputed facts support the Court's determination that the promise of work to be performed by NOSTAW in the Second Agreement was sufficient consideration to support, as a matter of contract law, the DEBTOR'S promise of payment. Those facts also support the determination that the work promised by NOSTAW was actually performed. The value bargained for by the DEBTOR was actually provided as a matter of undisputed fact. Moreover, even if it could be argued that completion of the grain handling facility directly benefitted only Green Lion and/or CIE, and not the DEBTOR, a benefit to a third party is nonetheless sufficient consideration for a promise or agreement. *Finn v. Heritage Bank & Trust Co.,* 178 Ill.App.3d 609, 612, 533 N.E.2d 539, 542 (Ill.App. 3 Dist. 1989).

**CONCLUSION**

The Second Agreement is a bilateral contract evidencing the exchange of mutual and concurrent promises between the DEBTOR and NOSTAW that is valid and enforceable under Illinois law. Even if adequate consideration had been wanting, because performance was rendered by NOSTAW and accepted by the DEBTOR, as a matter of Illinois law the DEBTOR could not thereafter have succeeded in a lawsuit to set aside its obligation to pay NOSTAW. When attacking the Second Agreement as unenforceable for want of consideration, the TRUSTEE stands in the shoes of the DEBTOR. Since the DEBTOR could not have succeeded in such an attack, neither can the TRUSTEE.

The TRUSTEE'S theory that the Second Agreement is unenforceable for want of consideration is without merit. There is no genuine issue of material fact and NOSTAW is entitled to judgment as a matter of law. The motion to alter or amend will be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###